**IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN**

SBP ROYAL DANE MALL, LLC,

*Plaintiff*

3:21-cv-54

v.

CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON subscribing to Policy numbered
B1230GP01654A19, THOMPSON HEATH &
BOND LIMITED, MARSHALL & STERLING
ST. THOMAS, INC. d/b/a THEODORE
TUNICK & COMPANY, CHARLES
TAYLOR ADJUSTING LIMITED, ~~and~~
CHRISTOPHER H. GAMBOL, and
CERTAIN UNDERWRITERS AT LLOYD'S
OF LONDON subscribing to Policy numbered
with unique market reference B1230GP02303B19

*Defendants*

ACTION FOR DAMAGES,
BREACH OF CONTRACT,
BREACH OF DUTY OF
GOOD FAITH,
UNJUST ENRICHMENT,
FAILURE TO ADJUST,
DECLARATORY JUDGMENT,
BAD FAITH


<strong><u>JURY TRIAL DEMANDED</u></strong>

<strong><u>FIRST AMENDED COMPLAINT</u></strong>

COMES NOW Plaintiff SBP ROYAL DANE MALL, LLC, by and through its undersigned counsel and hereby submits this Complaint against CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON subscribing to Policy numbered B1230GP01654A19, THOMPSON HEATH & BOND LIMITED, MARSHALL & STERLING ST. THOMAS, INC. d/b/a THEODORE TUNICK & COMPANY, CHARLES TAYLOR ADJUSTING LIMITED, ~~and~~ CHRISTOPHER H. GAMBOL, and  CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON subscribing to Policy numbered with unique market reference B1230GP02303B19 (hereinafter collectively referred to as "Defendants") alleging as follows:

I.    <strong><u>NATURE OF ACTION</u></strong>

1.     Plaintiff is seeking damages for breach of the insurance policy subscribed, sold and/or brokered by Defendants.

2.     Defendants failed to honor their obligations arising out of and related to the insurance policy purchased by Plaintiff, when Defendants failed to process, adjust and pay Plaintiff's claims for losses sustained in a catastrophic fire at Plaintiff's St. Thomas property that occurred on July 4, 2019.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

3.      Plaintiff is also seeking money damages and proper compensation for Defendants' failure to act in good faith, Defendants' negligence, errors and omissions, Defendants' unjust enrichment and Defendants' bad faith, as related to the processing, adjustment, and payment of Plaintiff's insurance claims.

## II.      PARTIES

4.      Plaintiff, SBP Royal Dane Mall, LLC (hereinafter as "Plaintiff"), is a Virgin Islands limited liability company with business identifier (580259), having its principal place of business at 5600 Royal Dane Mall, Suite 22, St. Thomas, U.S. Virgin Islands, 00802. At all relevant times herein, Plaintiff owned certain real estate located at 26A, 27B and 28A Dronningens Gade, St. Thomas, U.S. Virgin Islands, also known as "Royal Dane Mall".

5.      Defendant CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON subscribing to Policy numbered B1230GP01654A19 (hereinafter as "LLOYD'S"), are individuals and/or corporate entities that are members of Lloyd's syndicate and that subscribe to insurance policy No. B1230GP01654A19, procured and administered at the insurance market known as Lloyd's of London. The business address of each member of the syndicate is Lloyd's, One Lime Street, London, United Kingdom, EC3M 7HA. At all relevant times herein, Defendant LLOYD'S acted as insurer.

6.      Upon information and belief[1], Defendant CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON subscribing to Policy numbered with unique market reference B1230GP02303B19 (hereinafter as "LLOYD'S"), are individuals and/or corporate entities that are members of Lloyd's syndicate and that subscribe to insurance policy numbered with unique market reference B1230GP02303B19, procured and administered at the insurance market known as Lloyd's of London. The business address of each member of the syndicate is Lloyd's, One Lime Street,

---

[1] After the filing of the Complaint in this matter it was represented to Plaintiff that additional insurance policy (No. B1230GP02303B19) existed and covered the subject property. The Plaintiff was not, at the time of procuring insurance, provided with a copy of this additional policy. These defendants are added on the representation of opposing counsel and Plaintiff does not waive any rights by adding these defendants, or make any admissions as to the alleged policy or its content.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

London, United Kingdom, EC3M 7HA. At all relevant times herein, Defendant LLOYD'S acted as insurer.

7.     Defendant THOMPSON HEATH & BOND LIMITED (hereinafter as "THOMPSON") is a company organized and existing under the laws of the United Kingdom with its principal place of business and an address at 107 Leadenhall Street, London, ECA3 4AF, United Kingdom. At all relevant times herein, Defendant THOMSON acted as insurance broker, and/or as agent of LLOYD'S.

8.     Defendant MARSHALL & STERLING ST. THOMAS, INC. d/b/a THEODORE TUNICK & COMPANY (hereinafter as "TUNICK") is a New York corporation registered to conduct business in the U.S. Virgin Islands as foreign corporation which does business as THEODORE TUNICK & COMPANY, and having its local business address at 1336 Beltjen Road, Suite 300, St. Thomas, U.S. Virgin Islands, 00802. At all relevant times herein, Defendant TUNICK acted as insurance broker, and/or agent of THOMPSON and/or LLOYD'S.  The citizenship of TUNICK for purposes of diversity jurisdiction is New York.

9.     Defendant CHARLES TAYLOR ADJUSTING LIMITED ("hereinafter CT ADJUSTING") is a company organized and existing under the laws of the United Kingdom with its principal place of business and an address at Standard House, 12-13 Essex Street, London, WC2R 3AA, United Kingdom. At all relevant times, defendant CT ADJUSTING acted as insurance adjuster for TUNICK, THOMPSON and/or LLOYD'S.

10.    Defendant CHRISTOPHER H. GAMBOL ("GAMBOL") is an adult individual with his business address at 12 Elkenburg Street, Unit 7, South Haven, Michigan 49090-1774. At all relevant times herein, Defendant GAMBOL acted as insurance adjuster for CT ADJUSTING, TUNICK, THOMPSON and LLOYD'S.

11.    At all relevant times herein, Defendants LLOYDS, THOMPSON, TUNICK, CT ADJUSTING and GAMBOL, all engaged in the insurance business in the U.S. Virgin Islands by

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

entering into agreements with the Plaintiff, and/or among themselves, the performances of which were required to take place in St Thomas, U.S. Virgin Islands.

## III.   <u>JURISDICTION AND VENUE</u>

12.     This Court has diversity jurisdiction over this case pursuant to 28 U.S.C.S. § 1332 because the Plaintiff and the Defendants are citizens of different states and/or countries, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     Defendants' wrongful and negligent conduct were substantially committed in the U.S. Virgin Islands, and the injury and damages suffered by the Plaintiff were, are, and continue to be sustained and suffered by the Plaintiff in the U.S. Virgin Islands. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants' acts and omissions occurred in this district.

14.     Supplemental jurisdiction for Territorial law claims exists under 28 U.S.C. § 1367(a).

## IV.   <u>FACTUAL ALLEGATIONS</u>

15.     Plaintiff repeats, reiterates, realleges and incorporates by reference previous Sections as if fully set forth herein.

16.     At all relevant times herein, Plaintiff owned commercial real property located at 26A, 27B, 28A, Dronningens Gade, St. Thomas, U.S. Virgin Islands and commonly known as Royal Dane Mall (hereinafter referred to as the "Property" or "Royal Dane Mall").

17.     Royal Dane Mall is a large commercial property located in Historic District of Charlotte Amalie, having priceless historical and cultural value as being one of the oldest buildings in St. Thomas.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

18.     The Property is comprised of numerous assets, including but not limited to land, buildings, retail stores, restaurants, offices, residential units, restrooms, accessory structures, electrical and mechanical rooms, storage, etc.

19.     At all relevant times herein, Plaintiff leased the Property to various tenants.

20.     At all relevant times herein, Plaintiff did not have any employees and did not operate the Property. Instead, all leasing operations and Property maintenance have been contracted to and performed by Plaintiff's management company.

21.     In January 2011, when Plaintiff purchased the Property, Defendant TUNICK offered Plaintiff an all-risk insurance contract underwritten on the Lloyd's of London's insurance market and supplied by Lloyd's of London brokers.

22.     From January 2011 through January 2019, TUNICK would offer Plaintiff annual renewals of the all-risk policy covering the Property, each time underwritten by one or more of Lloyd's of London insurance syndicates.

23.     From January 2011 through January 2019, Plaintiff made timely payments to TUNICK for all the insurance premiums billed.

24.     From January 2011 through June 2019, Plaintiff had no claims that would be paid under any of its annual insurance policies offered by TUNICK.

25.     On February 9, 2019, TUNICK offered to Plaintiff all-risk insurance policy effective from February 10, 2019, through February 10, 2020, for a total premium of $9,916.50.

26.     Plaintiff accepted the renewal quote, and timely paid the full premium for the insurance policy offered.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

27.     The above-referenced February 10, 2019 insurance policy was procured at Lloyd's of London insurance market by THOMPSON and issued by CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON subscribing to Policy numbered B1230GP01654A19 (hereinafter referred to as the "Policy").

28.     LLOYD'S, THOMPSON and TUNICK accepted the full payment for the premium from Plaintiff and issued full policy with schedules and declarations outlining the Policy's coverage.

29.     The Policy provided coverage period from February 10, 2019, to February 10, 2020, and listed THOMPSON as "Cover Holder".

30.     TUNICK is also listed as "Cover Holder" for the insurance contracts obtained at Lloyd's of London insurance market.

31.     As "Cover Holders", THOMPSON and/or TUNICK were approved and authorized by LLOYD'S to (i) enter into contracts of insurance, (ii) underwrite a risk, (iii) settle claims, and (iv) create and sign documentation on behalf of LLOYD'S.

32.     The relationship between LLOYD'S and its "Cover Holders" is governed by agency with Cover Holder being the "Agent" and LLOYD'S being the "Principal".

33.     The Policy provided coverage limits as follows:

|    |                              |              |
|----|------------------------------|--------------|
| a. | Buildings and Foundations:   | $4,800,000   |
| b. | Business Personal Property:  | $   10,000   |
| c. | Loss of Rent:                | $  125,418   |

TOTAL LIMIT:                    $4,935,418.00

34.     As of July 4, 2019, Plaintiff understood that it was fully insured for the buildings, personal property and loss of rent as listed in the Policy.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

35.     In the evening on July 4, 2019, an enormous fire swept through Royal Dane Mall (hereinafter referred to as the "Fire").

36.     The flames from the Fire raged throughout the night and threatened to spread to neighboring buildings in the historic downtown of Charlotte Amalie.

37.     On July 5, 2019, in the late morning, the Virgin Islands Fire Service managed to finally extinguish the Fire.

38.     The Fire that raged throughout the night was visible from most of Charlotte Amalie downtown and was closely followed by residents of St. Thomas on various social media channels.

39.     On July 6, 2019, a local newspaper (The Virgin Islands Daily News) published a front-page story titled "Downtown Inferno" describing the Fire and firefighting operations in details.[2]

40.     At the time of the Fire, Plaintiff's principal was traveling overseas with very limited cell phone coverage. Plaintiff's principal received the terrible news about the Fire via text from the property management company representative.

41.     TUNICK became immediately aware of the Fire since its offices are located in close proximity to Royal Dane Mall, as well as from media posts, newspaper and TV reports.

42.     On July 5, 2019, immediately after the successful conclusion of the firefighting operation, the Virgin Islands Fire Marshall locked all gates to the Property and prohibited entry to any and all persons.

43.     Despite several attempts, Plaintiff's management company representatives were not allowed to enter the Property.

_____
[2] A copy of the story is attached as Exhibit "A".

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

44.     From July 5, 2019, through July 14, 2019, only inspectors from the Virgin Islands Fire Service and the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) were allowed entry into the Property.

45.     On July 15, 2019, the Virgin Islands Fire Marshall removed the locks from the Property and allowed Plaintiff's management employees to access the Property.

46.     On July 15, 2019, Plaintiff's principal arrived from New York and first time inspected the Property after the Fire.

47.     The Fire caused extensive damage and destruction to the Property. The Fire was practically a complete loss for Royal Dane Mall:

   a.   Two out of three buildings suffered catastrophic structural damages, wherein roofs and second floors trusses on two buildings had completely disintegrated in the fire;

   b.   Without roofs, floor trusses, and connecting beams, historic brick and stone walls of Royal Dane Mall were exposed to the elements with increased risk of collapse;

   c.   Plaintiff's management company office located on the second floor was completely destroyed in fire;

   d.   Plaintiff's residential units available for use to Plaintiff's principal and Plaintiff's management company were completely destroyed in fire;

   e.   Plaintiff's electrical rooms that housed electrical transformers were damaged by fire. The Virgin Islands Water and Power Company (WAPA) disconnected the Property from the electric grid, leaving the Property without any electric power;

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

  f. All three historical alleys in Royal Dane Mall were impassable due to fire debris from collapsed roofs and floor structures;

  g. Units spared by direct fire, were damaged by smoke, ashes, soot, and/or water from firefighting operations.

48. Immediately, after Plaintiff's representative inspected the Property and discovered catastrophic damage, Plaintiff contacted a public adjusting company ("World Claim") seeking assistance in dealings with the insurance company and the adjustment of the insurance claims.

49. On July 19, 2019, Plaintiff entered into a formal retainer agreement with World Claim.

50. On or about July 19, 2019, World Claim advised TUNICK that it was being retained by the Plaintiff.

51. On or about July 19, 2019, World Claim, on behalf of the Plaintiff, notified TUNICK that pursuant to the Policy, the Plaintiff was making claims for (i) damages to the building and foundations; (ii) loss of business personal property, and (iii) loss of rent.

52. On July 22, 2019, World Claim sent an email to TUNICK confirming the representation of the Plaintiff in writing.

53. Upon information and belief, on July 26, 2019, THOMPSON retained CT ADJUSTING to assist LLOYD'S in the adjustment of Plaintiff's claim.

54. Upon information and belief, CT ADJUSTING is not licensed to provide insurance adjustment services in the U.S. Virgin Islands.

55. Upon information and belief, CT ADJUSTING further retained GAMBOL as its insurance adjuster and assigned Plaintiff's claims to him.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

56.    Upon information and belief, GAMBOL is not licensed to provide insurance adjustment services in the U.S. Virgin Islands.

57.    Shortly after being retained for adjustment of the Fire claim, CT ADJUSTING and/or GAMBOL requested that the Plaintiff refrain from any clearing and debris removal until their inspection of the Property was complete.

58.    On September 5, 2019, two (2) months after the Fire, GAMBOL and representatives from ESi (Houston based fire investigative service company) arrived in St. Thomas, and for two (2) days conducted inspection of the Property.

59.    On September 17, 2019, CT ADJUSTING advised Plaintiff that they "no longer required the loss site to remain sectioned off and undisturbed."

60.    After receiving permission from CT ADJUSTING, Plaintiff began with clean-up of the Property and took proper and appropriate steps to protect the remaining assets.

61.    In good faith to properly present its claim under the Policy, and to properly determine the amount of the loss, Plaintiff retained and hired third parties and caused appraisals, valuations and professional studies to be performed.

62.    The results of the assessments of damages and valuations were then submitted to Defendants with intention to properly adjust the losses and obtain proper compensation under the Policy.

63.    Thereafter, Plaintiff in good faith repeatedly asked Defendants to assess the damages and present their adjustment of loss.

64.    Despite Plaintiff's requests, Defendants failed to provide their own adjustment of the

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

claims, refused to assess the damage to the Property, Plaintiff's business personal property and the loss of rent.

65.     In fact, Defendants refused to acknowledge any responsibility under the Policy, due to Plaintiff's alleged "failure to provide two (2) fire reports."[3]

66.     On or about July 17, 2020, Plaintiff submitted to Defendants three (3) Proofs of Loss ("POL"):

       a.   $103,750.00 for loss of business property covered by the Policy;

       b.   $538,746.00 for loss of rents covered by the Policy;

       c.   $5,500,430.50 for property damage covered by the Policy, which included permitted items such as contractor overhead and profit, scaffolding and machinery, electrical, debris removal, permits, engineering, and taxes.

67.     The claim package included the required documentation, an extensive claim submission, price valuation, itemization and actual losses sustained by Plaintiff, the submission of the damage assessment report, photographs, list of personal property and copies of tenants' leases.

68.     Despite the extensive claim package tendered by Plaintiff, Defendants summarily dismissed all three (3) Proofs of Loss submitted by Plaintiff, wrongfully claiming that there were not able to adjust the loss because they were not in receipt of the Virgin Islands Fire Service and/or ATF investigative reports regarding the cause of the Fire.

69.     Thereafter Defendants would simply "go silent", and not make any progress in adjusting the claim.

---

[3] Upon information and belief the '2 fire reports' are expected reports from the Virgin Islands Fire Service's investigation and the BATFE's investigation.  To date, the Plaintiff has received neither report despite repeated request.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

70.     On April 14, 2021, Plaintiff through its representative (WorldClaim) made its last attempt to resolve the claim in good faith, wherein a request has been made to assess the damages to the Property and make a settlement offer.

71.     In the event Defendants needed additional time, Plaintiff requested that Defendants agree to extend the time to bring a legal action seeking determination of the claim for additional 180 days.

72.     Under the terms of the Policy, Plaintiff had two (2) years from the Fire to file a legal action seeking enforcement of its rights in court.

73.     In his reply, GAMBOL again summarily denied Plaintiff's requests claiming wrongfully that without fire reports, Defendants were unable to determine whether the coverage even existed.

74.     In fact, the Policy does not contain any provision that would make the coverage contingent upon a receipt of the investigative fire report.

75.     Defendants' true purpose in delaying coverage determination was to let the Plaintiff's right to sue expire, and force Plaintiff to abandon its claims under the Policy.

76.     The damage to Plaintiff's property and Plaintiff's other losses are direct result of the Fire, which is a covered peril as defined in the Policy

77.     Plaintiff's damages for each covered loss exceed the limits of the Policy.

78.     Plaintiff undertook all reasonable efforts to protect and preserve any remaining assets located at the Property after it gained access to the Property. However, without insurance proceeds due to Plaintiff under the Policy, Plaintiff has very limited resources to make any meaningful repairs.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

79.     After the Fire, Royal Dane Mall remains completely uninhabitable, unsuitable for any uses, and cannot generate any income.

80.     As of today, Plaintiff continues to suffer from loss of business revenue.

81.     At all relevant times herein, Plaintiff has fully cooperated with Defendants, provided access to the Property, and provided documentation in support of its claims.

82.     Notwithstanding, Defendants have failed and refuse to acknowledge, process, adjust and settle any of Plaintiff's claims.

83.     As of today, Plaintiff received no payment ($0.00) for the damages sustained in the Fire.

84.     As of today, Defendants have ceased all meaningful communication with Plaintiff thus necessitating the filing of this lawsuit.

85.     Defendants' actions have been willful, wanton, deliberate, and made in bad faith, all in their efforts to deprive Plaintiff of its rights under the Policy.

86.     Defendants are liable to Plaintiff for compensatory, incidental, and punitive damages for its conduct, as well as for all costs, expenses, attorneys' fees and interest.

## **COUNT I**

### *BREACH OF CONTRACT*

87.     Plaintiff repeats, reiterates, realleges and incorporate by reference previous Sections as if fully set forth herein.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

88.     Defendants LLOYD'S through its agents (Cover Holders) Defendants THOMPSON and TUNICK entered into a contractual agreement with Plaintiff by offering an insurance policy, hereinbefore described as the Policy, for the Property with various areas of coverage.

89.     Plaintiff timely paid (in full) the insurance premium for the Policy.

90.     On July 4, 2019, the Property suffered catastrophic damage from the Fire.

91.     Subsequent to the Fire, Plaintiff submitted claims for (i) damage to building and foundation; (ii) business personal property damage; and (iii) loss of rent.

92.     Defendant LLOYD'S has breached its contractual obligations to Plaintiff including but not limited to (i) refusing to acknowledge coverage under the Policy, (ii) refusing to adjust Plaintiff's claims, (iii), refusing to pay for the documented damage to the Property, (iv) refusing to pay for the lost/damaged business personal property, and (v) refusing to pay for the loss of rent/business interruption, all of which was covered by the Policy.

93.     Defendant LLOYD'S is liable to Plaintiff for compensatory, incidental, consequential, and unlimited punitive damages for its conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT II

*BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING*

94.     Plaintiff repeats, reiterates, realleges and incorporate by reference previous Sections as if fully set forth herein.

95.     A contract for insurance existed between LLOYD'S and Plaintiff.

96.     At all relevant times herein, Defendants LLOYDS, THOMPSON, TUNICK, CT ADJUSTING and GAMBOL, engaged in insurance business in the U.S. Virgin Islands by entering

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

into agreements with Plaintiff, and/or among themselves, with their obligations required to be performed in the U.S. Virgin Islands.

97.     Under the U.S. Virgin Islands law, in every insurance contract, it is implied that all parties have a duty to act in good faith toward one another.

98.     Defendants in all its dealings with Plaintiff had a duty to act in good faith.

99.     Defendants breached the implied covenant of good faith and fair dealing by taking actions that deprived Plaintiff of the benefits for which it bargained.

100.    Defendants have engaged in fraudulent, deceitful, and other conduct inconsistent with their good faith obligations to Plaintiff as related to the Policy.

101.    Plaintiff reasonably expected that LLOYD'S, THOMPSON and TUNICK would act promptly and in good faith to address the damages associated with a fire, since they were in the business of selling insurance policies which explicitly covered fire damage.

102.    Instead, LLOYD'S, THOMPSON and TUNICK hired CT ADJUSTING as their insurance adjuster with instructions to drag out the claims process beyond two years of statute of limitation, to deprive Plaintiff of all claims under the Policy.

103.    Defendants LLOYD'S, THOMPSON and TUNICK refused to deal with Plaintiff directly. Instead, they delegated to CT ADJUSTING all their rights to acknowledge, process and adjust Plaintiffs claims under the Policy.

104.    Such delegation was done in clear violation of Lloyd's of London Syndicate policy appointing Cover Holders as agents for the insurers.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

105.    CT ADJUSTING is not a licensed insurance adjuster in the U.S. Virgin Islands, and as such is not qualified to make any adjustments of claims that originate in the U.S. Virgin Islands.

106.    Defendants LLOYD'S, THOMPSON and TUNICK decision to retain CT ADJUSTING as their unlicensed insurance adjuster was done with intention to delay and/or dismiss Plaintiff's claims under the Policy.

107.    CT ADJUTING further retained Defendant GAMBOL as its insurance adjuster, and delegated all its obligations under the contract with LLOYD'S, THOMPSON and TUNICK to him.

108.    GAMBOL is not a licensed insurance adjuster in the U.S. Virgin Islands, and as such is not qualified to make any adjustments of claims that arose in the U.S. Virgin Islands.

109.    Upon information and belief, Defendant GAMBOL is licensed as a workers' compensation adjuster in State of Louisiana and has no expertise in adjustment of fire claims.

110.    Despite being not licensed in the U.S. Virgin Islands, and having no required experience, Defendant GAMBOL was placed in position to acknowledge, process and adjust Plaintiff's claims under the Policy.

111.    As instructed by CT ADJUSTING, acting on behalf of Defendants LLOYD'S, THOMPSON and TUNICK, Defendant GAMBOL using dishonest and fraudulent tactics delayed adjustment of Plaintiff's claims, now for almost two (2) years.

112.    Although Defendant GAMBOL personally visited the Property and discovered for himself the extent of destruction and devastation (multi-million dollar damages), Defendant GAMBOL demanded that Plaintiff provide numerous documentation in support of its claims for loss of personal property ($10,000 limit) and loss of rent ($125,400 limit).

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

113.    Despite personally seeing burned pieces of the office files scattered around the Property, Defendant GAMBOL demanded that Plaintiff provided copies of individual invoices to support its claim for loss of personal property ($10,000 limit) and rent receipts to support its claim for loss of rent ($125,400 limit).

114.    Examples of Defendant's GAMBOL additional dishonest actions include, but are not limited to his statements that:

    (a) Plaintiff's submitted its claims without any supporting documentation;

    (b) Plaintiff's claims exceeded insurable value by 400%;

    (c) Soot, smoke and ash damage was not apparent at the Property during October 2020 inspection;

    (d) Delayed loss notification, despite TUNICK having actual and contemporaneous knowledge of the fire on July 4, 2019;

    (e) The Underwriters suffered from consequences of the delayed loss notification;

    (f) CT ADJUSTING was hindered by the delayed loss advice;

    (g) The discovery of circumstantial evidence of the fire starting intentionally.

115.    Despite having no legal experience, in his letter dated May 6, 2021, Defendant GAMBOL concluded that the Policy was subject to receipt of two (2) fire reports from Virgin Islands Fire Service and ATF, and that "*a review of the two fire reports would constitute a condition precedent to determining if the policy would be triggered.*"

116.    In the end, Defendant GAMBOL determined that without two (2) fire reports, there was no obligation to acknowledge, adjust and pay any claims submitted by Plaintiff.

117.    In his letter, dated May 6, 2021, Defendant GAMBOL acknowledged that he received instructions from Defendants LLOYD'S, THOMPSON and TUNICK to delay, deny or dismiss all claims submitted by Plaintiff under the Policy.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

118.   Examples of Defendants' further breaches of their duty of good faith and fair dealing to Plaintiff include but are not limited to:

(a)  Misrepresentation of the benefits, conditions and terms of the Policy;

(b)  Misrepresentation of pertinent facts as related to the provisions related to the coverage under the Policy;

(c)  Failure to adopt and implement reasonable standards for prompt investigation of the Fire and adjustment of Plaintiff's claims;

(d)  Refusal without any justification to acknowledge the coverage under the Policy;

(e)  Refusal to promptly adjust and pay for clean-up and debris removal from the Property;

(f)  Refusal to promptly adjust and pay for loss of Plaintiff's business personal property that had maximum limit of $10,000;

(g)  Refusal to promptly adjust and pay for loss of Plaintiff's loss of rent that had maximum limit of $125,418;

(h)  Refusal to effectuate prompt, fair and equitable settlement of Plaintiff's claims.

119.   For these and all the reasons stated in this complaint, Defendants breached their duty of good faith and fair dealing to Plaintiff.

120.   Defendants' actions and inactions are outrageous and are done with evil motive and with reckless indifference to Plaintiff's rights as policy holder.

121.   Defendants are liable for Plaintiff's compensatory, incidental, consequential, and unlimited punitive damages for its conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## **COUNT III**

### *FRAUDULENT FAILURE TO ADJUST*

122.   Plaintiff repeats, reiterates, realleges and incorporate by reference previous Sections as if fully set forth herein.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

123.    Defendants had a legal and contractual duty to conduct fair, efficient and prompt adjustments of Plaintiff's claims.

124.    Defendants LLOYD'S, THOMPSON and TUNICK refused to hire qualified insurance adjusters to inspect the Property following the fire.

125.    Defendants LLOYD'S, THOMPSON and TUNICK did not actively seek to assess damage claims fairly and honestly.

126.    In order to limit its potential payouts, Defendants LLOYD'S, THOMPSON and TUNICK intentionally retained CT ADJUSTING an unlicensed adjuster company to adjust Plaintiff's claims.

127.    In order to limit its potential payouts, Defendants LLOYD'S, THOMPSON and TUNICK further allowed CT ADJUSTING to hire another unlicensed individual insurance adjuster, wherein Defendant GAMBOL was retained to review Plaintiff's claims.

128.    Defendants LLOYD'S, THOMPSON and TUNICK retained CT ADJUSTING and GAMBOL (who are beholden to them for business) with the express intent that these adjusters would slow-play the claims process and delay acknowledgment of Plaintiff's claims, so that its losses would be limited.

129.    Despite the fact that Defendants had a legal duty to properly and fairly adjust Plaintiff's claims, they would attempt to place that burden on Plaintiff.

130.    Defendants organized its claims process to exert maximum pressure on Plaintiff to provide numerous documentation in support of its claims, although they knew that most of Plaintiff's records have been destroyed by fire.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

131.  Although after inspecting the Property, Defendants had clear knowledge about the extent of destruction and devastation (multi-million dollar damages), they continued to demand that Plaintiff provide numerous documentation in support of its claims for loss of personal property that had $10,000 limit, and for loss of rent that had $125,400 limit.

132.  Defendants LLOYD'S, THOMPSON and TUNICK provided direct instructions to CT ADJUSTING and GAMBOL to delay determination of the coverage, process and adjustment of Plaintiff's claims.

133.  Defendants wrongfully claimed that they were unable to adjust the loss because Plaintiff did not provide them with two (2) governmental entities reports regarding the fires.

134.  Defendants' actions and inactions constitute fraudulent failure to adjust for which it is liable to Plaintiff.

135.  Defendants are liable for Plaintiff's compensatory, incidental, consequential, and unlimited punitive damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## <u>COUNT IV</u>

### *IN THE ALTERNATIVE - NEGLIGENT FAILURE TO ADJUST*

136.  Plaintiff repeats, reiterates, realleges and incorporate by reference previous Sections as if fully set forth herein.

137.  In the Alternative, if this Court finds that Defendants did not fraudulently fail to adjust Plaintiff's claims, then they negligently failed to do so.

138.  Defendants had a legal and contractual duty to conduct fair, efficient and prompt adjustments of its policyholders' claims.

139.    Defendants LLOYD'S, THOMPSON and TUNICK retained an inadequate number of adjusters to adjust pending claims, including Plaintiff's claims.

140.    Defendants LLOYD'S, THOMPSON and TUNICK knew or had to know that their adjusters retained to adjust Plaintiff's claims, Defendants CT ADJUSTING and GAMBOL were not licensed in the U.S. Virgin Islands and that they were incapable of adjusting Plaintiff's claims.

141.    As such, Defendants breached its duty to Plaintiff.

142.    Due to Defendants' failure to properly adjust Plaintiff's claims, Plaintiff has suffered damages and delays.

143.    Defendants are liable for Plaintiff's compensatory, incidental, consequential, and unlimited punitive damages for their conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## **COUNT V**

### *FRAUD IN THE INDUCEMENT*

144.    Plaintiff repeats, reiterates, realleges and incorporate by reference previous Sections as if fully set forth herein.

145.    Defendants LLOYD'S, THOMPSON and TUNICK made material representations in soliciting and offering insurance coverage to Plaintiff.

146.    Defendants LLOYD'S, THOMPSON and TUNICK offered an insurance policy to Plaintiff in exchange for remuneration when they in fact had no intention to supply the insurance coverage as outlined in the Policy.

147.    Defendants LLOYD'S, THOMPSON and TUNICK promised to, *inter alia*, to pay for fire related damages and to repair, rebuild or replace the property with other property of like kind and

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

quality, in the event of a fire, and to pay for damage to Plaintiff's personal property, and Plaintiff's loss of rents.

148.    Plaintiff reasonably relied on Defendants LLOYD'S, THOMPSON and TUNICK representations to accept the Policy.

149.    In fact, Defendants LLOYD'S, THOMPSON and TUNCIK intention was to make the coverage effective and conditioned upon Plaintiff providing a satisfactory fire report from two (2) governmental agencies subsequent to any fire at the Property.

150.    The requirement to provide two (2) fire reports as a condition precedent to any coverage, was never communicated to Plaintiff at any time before the purchase of the Policy, nor it was included in the Policy itself.

151.    Defendants LLOYD'S, THOMPSON and TUNCIK misrepresentations induced Plaintiff into purchasing the Policy and caused Plaintiff to suffer a pecuniary loss therefrom.

152.    Defendants LLOYD'S, THOMPSON and TUNCIK made these misrepresentations, it did so with knowledge or belief of their falsity, without confidence in the truth, or with knowledge that it did not have the basis for its representations.

153.    Defendants LLOYD'S, THOMPSON and TUNCIK are liable for Plaintiff's compensatory, incidental, consequential, and unlimited punitive damages for its conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT VI

*DECLARATORY JUDGMENT*

154.    Plaintiff repeats, reiterates, realleges and incorporate by reference previous Sections as if fully set forth herein.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

155.    Based on the foregoing allegations, Defendant LLOYD'S has violated explicit terms and conditions of the Policy with Plaintiff.

156.    It should be declared that Defendant LLOYD'S is in breach of their duties and obligations under the Policy.

157.    Defendants LLOYD'S is liable for Plaintiff's compensatory, incidental, consequential, and unlimited punitive damages for its conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT VII

### *DECLARATORY JUDGMENT*

158.    Plaintiff repeats, reiterates, realleges and incorporate by reference previous Sections as if fully set forth herein.

159.    The Policy permits Defendant LLOYD'S to compel Plaintiff to submit to a binding appraisal in which Plaintiff would be required to accept the determination of 2/3 of the appraisers involved in the process.[4]

---

[4] **2. Appraisal**
If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
a. Pay its chosen appraiser; and
b. Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we will still retain our right to deny the claim.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

160.     Defendant LLOYD'S, however, still reserves the right to deny a claim even if the appraisers agree on the loss.

161.     22 V.I.C. § 820(a)(2) prohibits an insurer from including any language in an insurance policy which would deprive a Court of jurisdiction over a dispute.

162.     The "Appraisal" Section of the Policy attempts to deprive the Court of jurisdiction by making a process mandatory which would set an "amount of loss" thereby depriving this Court of jurisdiction.

163.     This Court should declare the "Appraisal" Section of the Policy void for violation of the Virgin Islands Code.

164.     LLOYD'S is liable for Plaintiff's compensatory, incidental, consequential, and unlimited punitive damages for its conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## COUNT VIII

*BAD FAITH*

165.     Plaintiff repeats, reiterates, realleges and incorporate by reference previous Sections as if fully set forth herein.

166.     On February 10, 2019, Plaintiff and LLOYD'S entered into an insurance contract, hereto before described as the Policy, which exists and remains enforceable.

167.     The Policy includes and requires that certain obligations, covenants, and conditions be performed by LLOYD'S.

168.     Plaintiff paid timely and in full for the entire policy premium as requested by LLOYD'S.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

169.    The Policy included coverage for Plaintiff's buildings and foundations on the Property, its business personal property, and for loss of rent.

170.    The Policy specifically provided coverage from fire during the life of the Policy.

171.    On July 4, 2019, Plaintiff's insured property (structures and business personal property) was severely damaged by a fire, and Plaintiff's business was interrupted during the policy period.

172.    LLOYD'S has (i) refused to acknowledge coverage, (ii) refused to adjust the claim, (iii), refused to pay for the damage to the Property, (iv) refused to pay for the damaged business personal property, and (v) refused to pay for the loss of rent, all of which was covered by the Policy.

173.    LLOYD'S has breached the contract (the Policy) by failing to meet its duty to pay for covered damages from the Fire.

174.    LLOYD'S refusal to acknowledge coverage, adjust and pay Plaintiff's claim is intentional breach, as these obligations are clearly required by the Policy, and by the U.S. Virgin Islands' law.

175.    LLOYD'S has no reasonably legitimate, or arguable reason, either in law or fact, for its refusal to comply with its obligations to pay for Plaintiff's fire damage.

176.    LLOYD'S has clear knowledge of the absence of any arguable or debatable reason that would justify its refusal.

177.    In fact, LLOYD'S refusal to acknowledge, adjust and pay Plaintiff's claim is intentional.

178.    LLOYD'S is trying to leverage its superior bargaining position to have Plaintiff abandon its claims or hoping that Plaintiff will miss the shortened filing deadline imposed through the Policy.

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

179.    LLOYD'S intentionally failed to comply with the terms of the Policy, that have been drafted by LLOYD'S itself and offered to Plaintiff without giving Plaintiff any opportunity to further amend or modify anything in the Policy.

180.    Due to LLOYD'S delay tactics, and its failure to make any payment to Plaintiff as required by the Policy, Plaintiff has been unable to commence required repairs or purchase new equipment and replace property damaged in the Fire.

181.    LLOYD'S actions and inactions and malfeasance has caused total disruption to Plaintiff's business and has inhibited Plaintiff's ability to operate its business and has caused significant de-valuation of the Property.

182.    LLOYD'S actions and inactions are outrageous, done with evil motive and/or with reckless indifference to Plaintiff's rights as the policy holder.

183.    LLOYD'S is liable to Plaintiff for compensatory, incidental, consequential, and unlimited punitive damages for its conduct, as well as for all costs, expenses, attorneys' fees, and interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully demand that a judgment be entered in favor of Plaintiff and against Defendants, and that Plaintiff be awarded the following:

      a.   Compensatory damages;

      b.   Incidental damages;

      c.   Consequential damages;

      d.   Punitive damages;

      e.   Statutory interest;

      f.   Attorney's fees and costs;

SBP Royal Dane Mall, LLC v. Certain Underwriters at Lloyd's of London et al.
3:21-cv-54
Complaint

    g.   Declaratory Relief;

    h.   Any other relief deemed appropriate.

                              Respectfully submitted,
                              **Michael L. Sheesley, P.C.**

Dated: August 30, 2021              s/Michael L. Sheesley
                              Michael Sheesley
                              V.I. Bar No. 1010
                              P.O. Box 307728
                              St. Thomas, VI 00803
                              (412)972-0412
                              michael@sheesley-law.com